753 So.2d 882 (1999)
Linda HALEY
v.
CALCASIEU PARISH SCHOOL BOARD.
No. 99-883.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
Writ Denied February 24, 2000.
*883 Kevin Camel, Lake Charles, LA, Counsel for Linda Haley.
Laura Schneidau, Metairie, LA, Counsel for Calcasieu Parish School Board.
*884 Musa Rahman, Baton Rouge, LA, Counsel for Workers' Compensation Corporation.
BEFORE YELVERTON, THIBODEAUX and SULLIVAN, Judges.
THIBODEAUX, Judge.
This appeal concerns a tort suit by Mrs. Linda Haley, an employee of the Calcasieu Association for Social Enrichment, Inc. (hereinafter "CASE"), for personal injuries caused by an allegedly defective condition in a building leased by CASE from the Calcasieu Parish School Board (hereinafter "the School Board"). In accordance with the terms of the lease, CASE agreed to hold the School Board harmless for any damages caused by building defects. Mrs. Haley filed suit against both the School Board and CASE. The claim against CASE was voluntarily dismissed (and was barred by workers' compensation). The trial court granted the School Board's motion for summary judgment based on the lease agreement.
We conclude that the School Board has failed to satisfy its initial burden of showing there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. We, therefore, reverse the trial court granting of summary judgment and remand this case for further proceedings.

I.

ISSUE
The issues raised in this appeal are: (1) whether there are genuine issues of material fact surrounding a hold harmless clause in a lease agreement between an injured employee's employer and the building owner which would preclude the summary judgment in favor of a lessor-owner against an employee's tort action for damages caused by an alleged defect in the premises; and, (2) whether a hold harmless clause in a lease agreement between an injured employee's employer and the building owner precludes the injured employee from bringing a tort action for damages caused by a defect in the premises against the lessor-owner?

II.

FACTS
The School Board owns the old Jackson Street Elementary School property at 1408 Jackson Street in Lake Charles, Louisiana. The North Building is two stories high with an exterior balcony connecting the second floor classrooms. There is an enclosed stairway at each end of the balcony which provides access between floors.
In May 1993, the School Board leased the building to CASE. The term of the lease was from July 1, 1993 until June 30, 1998. The lease agreement provided in part:
14. The Lessor shall not be liable to Lessee, or to Lessee's employees, patrons, licensees, invitees or visitors, or to any other person for any damage to person or property caused by any act, omission or neglect of Lessee, Lessee's employees, patrons, visitors, licensees, or invitees or any other person or any other tenant of said premises, and Lessee agrees to hold Lessor harmless from and defend Lessor against all claims for any such damage, whether the injury occurs on or off the leased premises, and whether or not the injury is caused wholly or in part by the Lessor's negligence. Lessee further assumes full responsibility for any and all damages whatsoever arising from or growing out of the occupancy, presence upon, or use of the leased premises by any person, including that caused or allegedly caused by defects in the premises and/or Lessor's alleged negligence.
On November 13, 1997 at approximately 6:30 p.m., Mrs. Haley left an upstairs classroom and proceeded to the stairs. Upon entering the stairway, she noticed that the stairway was unlit. Since the light switch for the stairway lights was *885 located in the boys restroom on the first floor, Mrs. Haley could not turn on the lights. She was unable to return to the second floor balcony since the stairway door had locked behind her. While proceeding down the darkened stairway, she fell and injured her left foot and ankle.
Mrs. Haley filed an action for damages against the School Board alleging that the stairway lighting was defective. The School Board filed a motion of summary judgment asserting that it was immune from suit based on the hold harmless clause in the lease by which it had transferred responsibility for the condition of the building to CASE. It also asserted that it had no knowledge of the alleged defect. Plaintiff filed an amended petition naming CASE as a defendant and adding her spouse and children as plaintiffs. The trial court granted the School Board's motion for summary judgment, dismissing the School Board with prejudice. Plaintiffs appealed. We remanded that appeal because it was not from a final judgment. Both the School Board and CASE filed motions for summary judgment. CASE asserted that the Workers' Compensation Act barred plaintiffs' tort action. Plaintiffs voluntarily dismissed their claims against CASE. The trial court again dismissed the claims against the School Board with prejudice. Plaintiffs brought this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court reviews summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La. 1991). Article 966(B) of the Louisiana Code of Civil Procedure provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
The mover has the burden of showing that no material issues of fact exist. La. Code Civ.P. art. 966(C)(2). To satisfy this burden, the mover must present supportive evidence that the motion should be granted. Once the mover establishes a prima facie showing, the burden of production shifts to the nonmoving party to present evidence of the existence of issues of material fact which preclude summary judgement. An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967. "Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted." Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94); 634 So.2d 1180, 1183.

Stairway Defect
The School Board bears the initial burden of proving its entitlement to summary judgment by showing the absence of material issues of fact. In order to meet this burden, the School Board asserted in the trial court that it was immune from suit in tort for damages caused by a defect in the leased premises because: (1) it had no knowledge of a defect; and, (2) CASE had assumed full responsibility for the building and any injuries caused by defects in the building.
The School Board is a political subdivision under La.R.S. 9:2800(E).[1] In order *886 to recover against such a government defendant under either a negligence or strict liability theory, the plaintiff must prove that: (1) the defendant owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive knowledge of the defect and failed to take corrective action within a reasonable time; and (4) the defect was a cause-in-fact of the accident. Newsom v. State, Dep't of Transp. & Dev., 93-815 (La.App. 3 Cir. 3/30/94); 640 So.2d 374, writ denied, 94-1118 (La.6/24/94); 641 So.2d 207; Bellard v. South Central Bell Telephone Co., 96-1426 (La.App. 3 Cir. 8/27/97); 702 So.2d 695, writ denied, 97-2415 (La.12/12/97); 704 So.2d 1202.
There is no question that the School Board owned the building in which Mrs. Haley suffered her injuries. The issue here is what, if any, "defect" caused her injuries. Mrs. Haley asserts that the stairway lighting system was defective because the lights did not illuminate automatically upon nightfall and because the light switch was not located in the stairway. The School Board responds that the stairway had an adequate and operative lighting system and that the only defect was that plaintiff's employer, CASE, failed to turn the lights on. Although not binding, Louisiana jurisprudence is instructive on the question of what constitutes a defect.
In Weiland v. King, 281 So.2d 688 (La. 1973), an employee of a lessee brought suit against the lessor-owner of a building seeking damages for personal injuries sustained in a fall down an unlit stairway. The stairway exit lights were inoperative, the stairway lights were not illuminated, the light switch was located outside the stairway in a location unavailable to that plaintiff, and there were no handrails on the landing from which plaintiff fell. The Supreme Court held that these factors "combined to create a dangerous trap for one descending the stairs." Id. at 691.
In Kessler v. Southmark Corp., 25,941 (La.App. 2 Cir. 9/21/94); 643 So.2d 345, the Second Circuit affirmed a jury verdict finding a lessor-owner partially at fault for creating an unreasonably dangerous condition on leased premises. The lessee-plaintiff there sustained personal injuries when she tripped over unexpected obstructions while attempting to traverse a room in order to reach a light switch on the far side of the dark room.
In Kelly v. Gilbert, 341 So.2d 632 (La. App. 4 Cir.1977), a tenant brought a tort suit against her lessor for personal injuries sustained in a fall down the stairway of her leased apartment. The Fourth Circuit found that the stairway was defective because, in part, there were no exit lights burning and the location of the light made the stairway lighting inadequate and inaccessible to service.
However, in West v. Celanese Coating Co., 305 So.2d 565 (La.App. 4 Cir.1974), the court held that an injured employee may not recover for personal injuries resulting from a fall in a stairway where it was not shown that the enclosed stairwell was unlighted because of a defective light switch. The court did not elaborate on the characteristics of the alleged switch defect.
After reviewing the jurisprudence on this issue, we find that the placement of the stairway light switch in the downstairs boys' restroom may render a darkened stairway unreasonably dangerous to a person seeking egress from the second floor. Whether the defect here is the location of the light switch and not merely the failure to turn the lights on is a question of material fact to be resolved by the factfinder, which precludes a granting of summary judgment.

*887 Liability for Defective Stairway
We now consider whether the hold harmless clause of the lease may operate to shield the School Board from liability for the defective condition of the stairway. The School Board argues that although an owner is liable for the condition of leased premises under La.Civ.Code arts. 2317, 2322 and 2695, the owner can shift this responsibility to a lessee pursuant to contract. In support of this argument, the School Board refers us to La.R.S. 9:3221.
Louisiana Revised Statutes 9:3221 provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
Under this statute, a lessor is relieved of liability for damages caused by a defect in the leased premises where the lessee has assumed responsibility for the premises, unless the owner knew or should have known of the defect. The lessee thus assumes dual responsibility of both lessor and lessee for defects of which the owner was unaware. This statute raises two questions: first, whether the School Board knew or should have known of the defect and second, whether a lessor-owner may shift liability for defects in its premises to an immune lessee-employer.

Knowledge of the Defect
The School Board contends that it was unaware of a stairway defect. It submitted the affidavits of Mr. Karl Bruchhaus, Mr. Bernard Beaco and Mr. Ray Aucoin. Mr. Bruchhaus, the Chief Financial Officer for the School Board, stated that he was responsible for receiving requests for repairs at the facilities owned by the School Board. He stated that he had never received a request for repair or complaint regarding the lighting at the Jackson Street Facility.
Likewise, Mr. Ray Aucoin, the Maintenance Department Planner for the School Board, stated that he was familiar with the Jackson Street facility and that there had been no requests for repairs at that facility since the School Board entered the lease with CASE.
Mr. Beaco, the Director of CASE, stated that CASE maintained the building in which plaintiff was injured and that the stairwell was equipped with a light fixture. He stated that he was responsible for notifying the School Board of building defects or maintenance needs and that he did not inform the School Board of CASE's failure to turn the lights on the evening Mrs. Haley fell.
These affidavits support the School Board's argument that it was unaware that the lights were off in the stairway the evening plaintiff fell and that CASE had not complained about the lighting prior to this incident. The affidavits do not show that the School Board was unaware of the location of the light switch, which may have been the defective condition. Rather, it can be inferred from the affidavits that the School Board was familiar with the facility and could be charged with constructive knowledge of this condition. Summary judgment is inappropriate in cases which turn on questions of subjective fact such as knowledge. Claiborne v. Conagra, Inc., 96-482 (La.App. 3 Cir. 10/30/96); 682 So.2d 851; Bruce v. Ampacet Corp., 93-866 (La.App. 3 Cir. 3/2/94), 634 So.2d 1351. We find that whether the School Board had knowledge of the alleged defect is a genuine issue of material fact which precludes summary judgment.

Assumption of Liability By Immune Party
We next consider whether a lessor-owner may shift liability to a statutorily immune party. The lessee here is the *888 plaintiff's employer. An employer is immune from suit in tort by its employees under the Workers' Compensation Act. La. R.S. 23:1032. This immunity encompasses the employer's alternate responsibility contractually assumed from the lessor. In discussing the employer's immunity under the dual capacity doctrine, the Louisiana Supreme Court has held:
Louisiana's dual capacity theory or doctrine pertains to employers with multiple relationships, connections or involvement to the employee's injury and/or the cause of the injury, which ordinarily would result in liability being imposed upon the employer by operation of law in addition to the provisions of the Worker's Compensation Act. The dual capacity doctrine limits the injured employee's recovery to worker's compensation benefits, precluding the pursuit of their tort claims against their employer.
Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, p. 5 (La.12/8/94); 646 So.2d 905, 910.
The terms of the lease here provided that CASE, the lessee-employer, would assume responsibility for damages arising from defects in the premises. However, a lessee-employer is immune from suit in tort by its employees. The lease, therefore, shifts liability for damages arising from premises defects to an entity that cannot be held liable for such damages. The product of this agreement is that the lessor-owner derives the benefit of the lessee-employer's immunity. As we held in Wallace v. Helmer Directional Drilling, Inc., 93-901, p. 10 (La.App. 3 Cir. 7/13/94); 641 So.2d 624, 629, "Such `back door' tactics to defeat tort liability cannot be countenanced."
We, therefore, hold that a lessor-owner may not manipulate La.R.S. 9:3221 to protect itself with the immunity afforded a lessee-employer. The lessor-owner remains liable for strict liability claims arising from the use of the leased premises.
Furthermore, the aggregation of the lessor-owner's contractual consignment of liability for the leased premises to a lessee under La.R.S. 9:3221 and the lessee-employer's statutory immunity under La.R.S. 23:1032 not only improperly cloaks the lessor-owner in the employer's immunity, but also wrongfully precludes an injured plaintiff-employee from bringing any tort action for damages caused by the defective leased premises. This denial of access to the courts violates a constitutional right.
Article 1, Section 22 of the Louisiana Constitution declares that, "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." In discussing the limits placed on court access by the workers' compensation statute, Justice Dennis, writing for the Louisiana Supreme Court, stated:
This provision, like the Fourteenth Amendment to the United States Constitution, protects an individual's access to the judicial process. Where access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary. The legislation under review does not substantially alter a claimant's access to the judicial process, and, therefore, it does not contravene the access to courts guarantee of our constitution.
Bazley v. Tortorich, 397 So.2d 475, 485 (La.1981) (citations omitted).
The plaintiff in Bazley sought to recover from his employer for the alleged intentional acts of a fellow employee, arguing that the workers' compensation bar to tort suits against employers impinged on his constitutional rights, including his right to judicial redress. The Louisiana Supreme Court held that the acts of the fellow employee were not intentional acts under the Workers' Compensation Act and that *889 the preclusion of a tort claim against an employer for acts of a fellow employee did not violate a plaintiff-employee's constitutional right of access to the courts. The present case is distinguishable from Bazley because the injured plaintiff-employee in this case seeks to bring a tort action against the lessor-owner of the building, not the lessee-employer, and, the employer's immunity under the Workers' Compensation Act is being exploited to protect a non-employer, the lessor-owner.
While the legislature is free to abrogate or abridge a person's access to the courts, potential defendants may not usurp this authority by contractually manipulating an employer's statutory immunity to shield others from liability. We find that the extension of the lessee-employer's statutory immunity to the lessor-owner substantially impairs a claimant's access to the judicial process and, therefore, violates the access to courts guarantee of our state constitution.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion. All costs of this appeal are assessed to the Calcasieu Parish School Board.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 9:2800(E) provides:

"Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:382(1), and their commissioners and other officers and employees.