773 So.2d 914 (2000)
MERCURY CELLULAR TELEPHONE COMPANY
v.
CALCASIEU PARISH OF LOUISIANA, et al.
No. 00-0318.
Court of Appeal of Louisiana, Third Circuit.
December 13, 2000.
*915 Jesse R. Adams, III, Oreck, Bradley, Crighton, Adams & Chase, New Orleans, LA, Counsel for Plaintiff/Appellant, Mercury Cellular Telephone Company.
Russell J. Stutes, Jr., C. Eston Singletary, David W. Clark, Scofield, Gerard, Veron, Singletary & Pohorelsky, Lake Charles, LA, Counsel for Defendants/Appellees, Calcasieu Parish of Louisiana, et al.
Court composed of Judge THIBODEAUX, Judge SAUNDERS, Judge PETERS, Judge AMY and Judge GREMILLION.
THIBODEAUX, Judge.
A cellular telecommunication service provider contests the assessment of use taxes for cellular telephones it furnishes to its customers for less than their actual value and the assessment of delinquency penalties for the failure to pay the taxes timely. We affirm the trial court's judgment regarding the assessment of use taxes on cellular telephones that are furnished for less than the cost to the cellular provider. We also affirm the assessment of delinquency penalties.

*916 I.

ISSUES
We shall consider:
(1) whether furnishing of a cellular telephone to a cellular service customer for a price less than its actual value or for free is a "sale" or "use" of the telephone that is taxable by the parish taxing authority;
(2) whether a tax levied on a cellular telephone which has been furnished for a nominal amount or gratuitously should be based on the cost price or sale price of the telephone or whether the tax for the telephone is included in the cellular service contract;
(3) whether the telecommunication provider owes a delinquency penalty for its failure to pay taxes owed to the parish taxing authority; and,
(4) whether good faith is a defense to delinquency penalties.

II.

FACTS
Mercury Cellular Telephone Company (hereinafter "Mercury") is a telecommunication services provider which operates retail outlets in Calcasieu Parish, Louisiana. At those sites, Mercury offered cellular telecommunication equipment, accessories and services for sale to the public. Mercury purchases its inventory of cellular telephones from manufacturers and/or wholesalers to whom it presents a "resale certificate" certifying that Mercury intends to resell the telephones and collect sales taxes from its customers. Because it presented the resale certificate and espoused an intent to resell the telephones, Mercury was not taxed on the initial purchase of the telephones. Double taxation was thus avoided.
During the relevant period, Mercury regularly offered to sell cellular telephones at a discounted price if the customer contracted to purchase cellular telecommunication services from Mercury for a specific period of time. For those customers who entered into contracts for cellular telecommunication services, Mercury provided cellular telephones for free or for a nominal charge or for a discounted price below Mercury's original cost. Customers who purchased telephones from Mercury without entering cellular service contracts were charged the full retail value of the telephones. Mercury charged all of its cellular service customers the same amount, regardless of whether they acquired a cellular telephone from Mercury. Mercury collected applicable taxes on the "sales price" of the telecommunication products and services purchased by the customer.
The Calcasieu Parish School Board (hereinafter "the School Board") collects sales and use taxes within Calcasieu Parish. In performing this function, the School Board conducted an audit of Mercury's financial records for the period of January 1, 1993 through December 31, 1995. Through this audit, the School Board learned that Mercury regularly furnished cellular telephones to its customers for free or a price less than their actual value. The School Board determined that Mercury did not resell the cellular telephones as required by the resale certificates. Accordingly, the School Board assessed use taxes on these telephones in the amount of $66,016.47, as well as $15,859.62 interest and $16,504.23 delinquency penalties.
Mercury paid the assessed amounts under protest and thereafter filed suit for a refund. Both Mercury and the School Board filed motions for summary judgment. A hearing was held on the motions for summary judgment on January 5, 1999. The trial court determined that Mercury "used" the cellular telephones to attract customers and found this use susceptible to the use taxes assessed by the School Board. The trial court also determined that the School Board properly assessed delinquency penalties and that these penalties were not subject to the good faith *917 defense raised by Mercury. The trial court rendered its judgment on November 29, 1999, wherein it granted the School Board's Motion for Summary Judgment and ordered Mercury to pay all taxes, interest and penalties assessed for the relevant period as well as attorney fees in the amount of $9,838.00, ten percent of the aggregate of the award, plus legal interest. The trial court denied Mercury's Cross Motion for Summary Judgment. Mercury brought this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court reviews summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991); Haley v. Calcasieu Parish School Bd., 99-883 (La.App. 3 Cir. 12/8/99); 753 So.2d 882, writ denied, 2000-54 (La.2/24/00); 755 So.2d 242. Article 966(B) of the Louisiana Code of Civil Procedure provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
The burden of showing that there are no genuine issues of material fact is borne by the mover. La.Code Civ.P. art. 966(C)(2). To satisfy this burden, the mover must present supportive evidence that the motion should be granted. Once the mover establishes a prima facie showing, the burden of production shifts to the nonmoving party to present evidence of the existence of issues of material fact which preclude summary judgement. An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967.

Sale v. Use of Cellular Telephones
We first consider whether Mercury "sold" or "used" the cellular telephones it furnished to its customers for less than their actual value, i.e., less than the price for which Mercury purchased the telephones.
Mercury contends that it sold the telephones as part of a "telecommunications package" that included both the cellular telephone and access to Mercury's cellular telecommunication services. Mercury billed its customers for the service package on a monthly basis and collected and remitted sales taxes based on the sale price of this package.
The School Board responds that Mercury "used" rather than "sold" the telephones that it gave away for free or for a nominal amount. The School Board argues that the telephones were not sold in the regular course of business because, although Mercury regularly provided the telephones for free or a nominal amount, no retail business could operate if it regularly engaged in the practice of selling products at or below their cost; rather, Mercury used the telephones to procure cellular service contracts. City of Shreveport v. Kleowdis, 408 So.2d 956 (La.App. 2 Cir.1981) and several cases from other states are cited to buttress this argument.
The Calcasieu Parish School Board Sales and Use Tax Ordinances (hereinafter "the School Board Ordinances") set forth the definitions of "sale" and "use."[1] "Sale" includes "any transfer of title or possession or both, exchange, barter, conditional or otherwise, in any manner or by *918 any means whatsoever of tangible personal property for consideration." School Board Ordinance Section 1.16. "Sale is a contract whereby a person transfers ownership of a thing to another for a price in money." La.Civ.Code art. 2439. "Use" is the exercise of any right or power over tangible personal property incident to the ownership thereof, exclusive of the sale at retail of that property in the regular course of business. School Board Ordinance Section 1.23(A). "Sale at retail" includes "a sale to a consumer or to any other person for any purpose other than for resale as tangible personal property." School Board Ordinance Section 1.14(A)(I).
There are three categories of cellular telephone transactions at issue here: (1) those events in which Mercury furnished telephones to its customers for free; (2) those in which Mercury charged only a nominal fee, such as $1.00 for the telephones; and (3) those in which Mercury charged its customers serious consideration but less than the actual price or value of the telephones. Those cellular telephones which were sold at full retail price to persons who did not enter cellular telecommunication service contracts are not at issue in this case.
We begin our analysis with the cellular telephones Mercury provided gratuitously to those customers who entered cellular service contracts. Clearly, free is the antithesis of sale: one cannot "sell" an item that is provided free of charge. Mercury purports to have sold the telephones as part of a telecommunication package, relying, in part, on S & R Hotels v. Fitch, 25,690 (La.App. 2 Cir. 3/30/94); 634 So.2d 922.
In S & R Hotels, 634 So.2d 922, the Second Circuit considered whether a hotel actually charged hotel patrons for foods and beverages it marketed as "complimentary breakfasts." The hotel argued and the court agreed that the designation "complimentary" was a marketing strategy and that the price of the breakfasts was actually included in the price of the room and that the customers were charged a sales tax on these items.
We find that the complimentary breakfasts in S & R Hotels are inapposite to the "free" telephones Mercury provided its customers because Mercury cannot show that it charged any price for these telephones. Most importantly, cellular service customers were charged the same rates regardless of whether they received a telephone. There is no evidence in the record that Mercury's customers paid any consideration for these telephones as required for a "sale" as defined by the School Board Ordinances.
Having eliminated the sale option, we next consider whether Mercury "used" the free cellular telephones. Mercury claims that cellular telephones are not "used" until the ultimate customer either initiates or receives a telephone call. We disagree.
The definition of "use" in the School Board Ordinance expressly includes the exercise of any right or power incident to ownership. School Board Ordinance Section 1.23(A). Article 477(A) of the Louisiana Civil Code identifies the incidents of "ownership": "Ownership is the right that confers on a person a direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." (Emphasis added.) Under the civilian theory of ownership, using an item to perform its intended function is not the sole means of exercising ownership. Additionally, ownership rights include the right to dispose of that item. Applying these principles to the facts of this case, we find that Mercury used the cellular telephones it provided to its customers gratuitously in that: (1) Mercury used the free telephones to entice customers to enter telecommunications contracts, and (2) relinquishing property to another who acquires ownership is a "disposition" of that property only legally available to its owner.
*919 The next category of telephones are those which Mercury provided for a nominal amount. Mercury included the nominal amount in the sale price of the cellular service contract and charged its customers sales taxes on these nominal amounts.
Sales at retail in the regular course of business are excluded from use taxes. School Board Ordinance Section 1.23(A). Arguably, routinely "selling" retail merchandise for nominal consideration is not a "sale at retail in the regular course of business." It is implicit in conventional business practices that "sales at retail" made in the "regular course of business" will be for a profit, with items occasionally being sold at a discounted price.
Sales for nominal consideration are the subject of La.Civ.Code art. 2464 which provides, in pertinent part, "The price must not be out of all proportion with the value of the thing sold." "Thus, the sale of a plantation for a dollar is not a sale, though it may be a donation in disguise." Id.
We find that regularly providing retail property to customers for a nominal fee is not a "sale at retail in the regular course of business." A sale for a nominal amount is more akin to a donation than a sale. Instead of selling these telephones, Mercury used them in the same manner in which it used those telephones it provided gratuitously as previously discussed.
The third category of telephones are those for which Mercury charged serious consideration, i.e., more than a nominal amount, but less than the retail price or the cost to Mercury of these telephones. The School Board Ordinance defines a "sale" as the transfer of ownership for consideration. While at first blush such a transaction may plausibly be seen as a valid sale, the fact of the matter is that this transfer is an incentive invariably provided by Mercury as a conduit for marketing its cellular service. It is also not a "sale at retail in the regular course of business ." Use taxes are, therefore, due on these transactions.

Determination of Appropriate Taxes
Having determined that Mercury used those cellular telephones that it furnished to its customers either gratuitously or for a nominal charge and also used those cellular telephones for which it charged serious consideration, we now determine the appropriate taxes. We are guided by the well-established principle that taxing statutes are strictly construed against the taxing authority and courts will adopt the construction favorable to the taxpayer. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975), cert. denied, 424 U.S. 953, 96 S.Ct. 1427, 47 L.Ed.2d 359 (1976).
At the time Mercury purchased the cellular telephones at issue here it presented a certificate of resale, certifying that the telephones were purchased for resale. The effect of presenting the certificate of exemption is that Mercury was not assessed sales tax on items it purchased for resale in order to avoid double taxation. However, as noted above, Mercury failed to resell some of those telephones and, therefore, failed to collect the appropriate taxes. We find that Mercury owed use taxes for those telephones.
Mercury alleges that it sold the cellular telephones at issue here in a telecommunication package which included both the cellular telephone and access to cellular telecommunication services. Mercury contends that the School Board is seeking to tax cellular telecommunication services which are exempt from taxes assessed by local political subdivisions. See La.R.S. 47:301(14)(b)(aa). For the reasons discussed above, this argument is completely without merit.

Delinquency Penalties and Defenses
The School Board assessed delinquency penalties for Mercury's failure to pay the taxes timely. Mercury paid the *920 taxes under protest and argued that delinquency penalties should not be assessed because it made a good faith effort to pay the taxes it believed it owed.
Under Section 6.09 of the School Board Ordinance, delinquency penalties shall be collected when the amount of tax due by a dealer is not paid by the date due. Section 6.10 permits the School Board to assess negligence penalties when the circumstances indicate willful negligence or intentional disregard of rules and regulations but no intent to defraud.
Louisiana courts have declined to assess delinquency penalties under very limited circumstances. For example, in BP Oil Co. v. Plaquemines Parish Gov't, 93-1109 (La.9/6/94); 651 So.2d 1322, the court found that there was an ambiguity in the construction of the statute that made the good faith defense of having paid the taxes believed to have been owed applicable. In L.A. Frey and Sons v. Lafayette Parish School Bd., 262 So.2d 132 (La.App. 3 Cir. 1972), this Court waived delinquency penalties because a section of the applicable tax ordinance permitted waiver of interest and penalties in the event that the failure to pay the tax was explained to the satisfaction of the tax collector.
Good faith was not at issue in Lafayette Parish School Bd. v. C & B Sales and Svc., Inc., 98-1096 and 98-1097 (La.App. 3 Cir. 2/3/99); 735 So.2d 6, wherein this Court upheld the trial court's waiver of delinquency penalties due to the inordinate delay in the taxing authority's efforts to collect the owed taxes.
The Louisiana Supreme Court held in St. John the Baptist Parish School Bd. v. Marbury-Pattillo Const. Co., Inc., 259 La. 1133, 254 So.2d 607 (1971), that delinquency penalties were not subject to good faith or substantial effort defenses where the taxing ordinance left no discretion in the application of the penalties.
We find that good faith is not available as a defense to the penalties assessed here. Furthermore, even if it were, we would find the defense of good faith inapplicable here because Mercury regularly purchased cellular telephones upon presentation of a certificate of resale and then furnished those telephones gratuitously to its customers who entered telecommunication service contracts. This intentional misrepresentation which operated to preclude the local taxing authorities from collecting any taxes on these phones would render the good faith defense unavailable.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed regarding the assessment of use taxes for the cellular telephones Mercury furnished to its customers at a price less than the cost to Mercury. We also affirm the assessment of delinquency penalties, interest and attorney fees.
All costs are assessed to Mercury Cellular Telephone Company.
AFFIRMED.
NOTES
[1] Parishes, school boards and political subdivisions are authorized to levy and collect sales and use taxes. La. Const. art. VI, § 29; La. R.S. 33:2737. Pursuant to this grant of authority, the School Board, Calcasieu Parish, the Calcasieu Parish Police Jury, and the City of Lake Charles enacted sales and use tax ordinances at issue here. These ordinances are substantially similar in all pertinent parts. By agreement of these political subdivisions, the School Board collects all sales and use taxes within Calcasieu Parish.