801 So.2d 648 (2001)
Ronald B. COLSON, Jr. (II), Ronald B. Colson and Virginia Colson
v.
Eric JOHNSON, et al.
No. 01-967.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*649 Richard Starling, Pineville, LA, Attorney for the Plaintiff/Appellant Ronald B. Colson, Jr. (II).
Paul Boudreaux, Jr., Alexandria, LA, Attorney for the Defendant/Appellee The City of Pineville.
Court composed of NED E. DOUCET, JR., Chief Judge, JIMMIE C. PETERS, and MARC T. AMY, Judges.
DOUCET, Chief Judge.
The Plaintiff, Ronald B. Colson, Jr. (II), appeals the trial court's dismissal of his claim against the City of Pineville (the City), pursuant to the City's motion for summary judgment.
Ronald Colson, Jr. (II) was one of a group of young men who began fighting in Kelso Park in Pineville. They were told to leave by Carl Hall, a City employee. A short time later, the two groups began fighting again, this time in the street outside the park. Hall went to his vehicle and radioed the police. The police arrived in less than three minutes, but in the meantime, Patrick Johnson struck Colson who fell, hit his head and was injured. Colson and his parents brought this suit against Eric Johnson, Patrick Johnson and the City. The City filed a motion for summary judgment asserting that it is entitled to dismissal of Colson's claims against it because it is under no duty to protect against the random, unanticipated criminal acts of a third party. The trial court granted the motion, stating that the City did not have a duty to continue to stop an altercation once the combatants left the confines of the park.

STANDARD OF REVIEW
[1] An appellate court reviews summary judgments de novo, applying the *650 same criteria as the district court in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991); Haley v. Calcasieu Parish School Bd., 99-883 (La.App. 3 Cir. 12/8/99); 753 So.2d 882, writ denied, 2000-54 (La.2/24/00); 755 So.2d 242. Article 966(B) of the Louisiana Code of Civil Procedure provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
The burden of showing that there are no genuine issues of material fact is borne by the mover. La.Code Civ.P. art. 966(C)(2). To satisfy this burden, the mover must present supportive evidence that the motion should be granted. Once the mover establishes a prima facie showing, the burden of production shifts to the nonmoving party to present evidence of the existence of issues of material fact which preclude summary judgement. An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967.
Mercury Cellular Tel. Co. v. Calcasieu Parish of La., 00-0318, pp. 3-4 (La.App. 3 Cir. 12/13/00); 773 So.2d 914, 917, writ denied, 01-0126 (La.3/16/01); 787 So.2d 314.

LIABILITY
The Fourth Circuit in Sutter v. Audubon Park Com'n, 533 So.2d 1226, 1230 (La.App. 4 Cir.1988), writ denied, 538 So.2d 597 (La.1989) explained the method by which the courts of this state determine the existence of liability:
Louisiana courts employ a duty/risk analysis to determine what constitutes actionable negligence in a tort suit. See, e.g.: Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976). In order to recover, plaintiff must show not only that the defendant's conduct was a cause-in-fact of the harm suffered, but also that the defendant breached a legal duty to protect against the particular risk involved. Harris v. Pizza Hut of Louisiana, Inc., supra, 455 So.2d at 1370. Duty is a question of law. Id. at 1371.
Because this court must use the same criteria as the trial court in determining whether summary judgment was appropriate, we must first determine whether the City had a duty to protect Ronald Colson from this kind of attack under the facts of this case. Although the Defendants argue only that Carl Hall assumed a duty, we will consider whether the City had a duty to Colson under the facts of this case.

THE CITY'S DUTY
The court in Sutter, 533 So.2d at 1231 (citations omitted), discussed the duty of care in connection with a public park, as follows:
In general, owners and occupiers of land have a duty to refrain from acting negligently toward those they know or should know will come onto their property. The proper test is "... whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others...." The duty is not to insure against the possibility of an accident, but to act reasonably. Thus, the landowner has a duty to discover any unreasonably dangerous conditions on the premises and to either correct the conditions or warn of the danger. A governmental agency or *651 municipality operating a public park or playground is held to the same degree of care arising from ownership as any other person in possession and control of land; this rule requires that the agency or municipality use reasonable or ordinary care to keep the premises in reasonably safe condition for those using them.
The court in Sutter further stated that:
[T]he operator of a public park does not necessarily have the same duty with regard to third-party criminal conduct as does the proprietor of a business. The duty owed by an owner or occupier of land must be ascertained by examining the particular facts.... In the same vein, the operator of a large, open public park may owe a lesser duty to protect against criminal activity than would the proprietor of a business, which is conducted in a confined space and from which the proprietor derives revenue.
This court has stated in Shepard v. Bradford, 98-172, p. 4 (La.App. 3 Cir. 11/4/98); 721 So.2d 1049, 1051, writ denied, 98-3006 (La.11/19/99); 749 So.2d 667 (citations omitted) that "[i]n the maintenance and operation of its public parks, playgrounds and recreational areas, a city-parish owes a duty commensurate with ordinary and reasonable care under the circumstances."
Therefore, we must first use a reasonable person standard to determine whether the threat of fights at the park constituted an unreasonable danger of injury to park patrons.
The evidence of record does not establish either that the neighborhood in which Kelso Park is located has a high crime rate or that there were a sufficient number of prior fights to create a foreseeable danger of this type of incident.
Considering the evidence, we find no basis on which to conclude that Kelso Park presented an unreasonable danger to its patrons. Nor do we find any significant history of violent crime in or around the park such that the City would have a duty to provide special security or to warn park patrons. Therefore, we find that the City had no legal duty to provide protection to the patrons of Kelso Park.

DID THE CITY ASSUME A DUTY?
Although not explicitly argued, the Plaintiff seems to infer that the City assumed a duty of protection by stationing a security guard at the park. The Plaintiff cites Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984) in support of this position. However, the supreme court in Posecai v. Wal-Mart Stores, Inc., 99-1222, p. 10 (La.11/30/99); 752 So.2d 762, 769, fn. 7, rejected this interpretation of that case stating that:
We reject the court of appeals' finding that Sam's assumed a duty to protect its patrons from crime when it hired a security officer to guard its cash office. This finding relies on an erroneous interpretation of our decision in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Pizza Hut does not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes some security measures. Rather, Pizza Hut was an ordinary negligence case, holding that a security guard employed by a business must exercise reasonable care for the safety of the business' patrons and breaches that duty when his actions cause an escalation in the risk of harm. In Pizza Hut, the restaurant's security guard was negligent because he heightened the risk of harm to Pizza Hut's customers by provoking gunfire from *652 armed robbers who had entered the restaurant.
The evidence in this case is that Carl Hall was not hired as a security guard. Both the City's Public Works Director and its Recreation Director, who had supervisory authority over Hall, testified that he was hired to maintain and oversee the park and to interact with the young people who used the facility. They maintained that he was not hired as security. Fred Baden, the mayor at the time of the incident, who instructed that Hall be hired, testified that the position did not include security duties. All three testified that, in case of trouble, Hall was to radio the police on a walkie-talkie provided for that purpose.
Therefore, we find that the evidence shows that the City did not assume a duty to protect park patrons by stationing Carl Hall in the park.

DID CARL HALL ASSUME A DUTY?
The Plaintiff's primary argument is that Carl Hall assumed a duty when he intervened in the fight. The Plaintiff once again cites Harris, 455 So.2d at 1372 for the proposition that once a duty to provide security has been assumed, the individual voluntarily undertaking this duty must not "contribute by his act or omission to an escalation of violence." However, even if Hall himself can be said to have assumed a duty, we cannot say that any failure to perform that duty in a reasonable and prudent manner is attributable to the City.
The question of whether an employer will be held responsible under the doctrine of respondeat superior was discussed by the court in Puccio v. Finch, 454 So.2d 272 (La.App. 4 Cir.), writ denied, 458 So.2d 478 (La.1984). The court found that a determination that an employer is liable because of respondeat superior includes, but is not limited to consideration of whether the employee's conduct is closely related in time, place and cause to his employment. In other words, did the acts arise out of his job duties? The fact that the employee acts in violation of his employer's rules and directives is not necessarily conclusive. However, respondeat superior will not apply where the employee has completed or abandoned his job duties to engage in conduct unrelated to his job duties. Id.
In this case, the evidence is uncontradicted that Hall was not hired to provide security at the park. His job was to keep the park clean and oversee activities there. In case of problems, he was to radio the police. He had no job duties outside the park. When the altercation broke out in the park, he ejected the participants, one of whom was his own son. When the fight again broke out outside the park, he went to his car, got his radio, and radioed the police thereby fulfilling his duties as park custodian. His further actions, if any, in attempting to stop the fight outside the park were beyond the scope of his duties as custodian of Kelso Park and constitute an abandonment of his job duties to engage in actions apparently motivated by the fact that his son and a cousin numbered among the participants. Therefore, we find that no question of fact remains but that the City of Pineville cannot be held responsible for Hall's actions.

CONCLUSION
Finding no issue of material fact remaining and that the Defendant is entitled to summary judgment as a matter of law, we affirm the judgment of the trial court. Costs of this appeal are assessed to the Plaintiff.
AFFIRMED.