838 So.2d 854 (2003)
UNWIRED TELECOM CORP.
v.
PARISH OF CALCASIEU, School Board & Police Jury.
No. 02-839.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
*855 Richard Phillip Ieyoub, Attorney General, Tina Vicari Grant, Louisiana Dept. of Justice, Baton Rouge, LA, for State of Louisiana.
William M. Backstrom Jr., Coleman Douglas Ridley, Jones, Walker, et al., New Orleans, LA, for Plaintiff/Appellant, Unwired Telecom Corp.
Mark James Jeansonne, Attorney at Law, New Orleans, LA, for Amicus Curiae, Alltel Communications, Inc., AT&T Wireless Services.
Russell Joseph Stutes Jr., Toni Lewis Petrofes, Scofield, Gerard, Veron, et al., Lake Charles, LA, for Defendants Appellees/Appellants, Calcasieu Parish Police Jury, Calcasieu Parish School Board.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN, and BILLY HOWARD EZELL, Judges.
EZELL, J.
This case follows in the footsteps of a previous opinion by this court in Mercury Cellular Telephone Co. v. Calcasieu Parish of La., 00-318 (La.App. 3 Cir. 12/13/00), 773 So.2d 914, writ denied, 01-126 (La.3/16/01), 787 So.2d 314. This court found that Mercury, a telecommunications services provider, owed use taxes for telephones that it certified were purchased for resale, thereby avoiding sales tax, but in *856 reality furnished the phones for a nominal amount or gratuitously with a cellular service contract and not collecting sales taxes. Another issue presented to this court is whether Elevating Boats, Inc. v. St. Bernard Parish, 00-3518 (La.9/5/01), 795 So.2d 1153, should apply limiting a parish's combined interest, penalties, and attorney's fees under the sales and use tax ordinance to 15%.

FACTS
As was observed by this court in Mercury, these wireless communication businesses purchase these phones and present a "resale certificate" certifying that they intend to resell the phones and collect sales tax from the customers. As a result the company is not accessed sales tax on items it purchases for resale, thereby avoiding double taxation. Mercury, 773 So.2d 914. However, in reality, the companies use the phones as an enticement to lure customers to choose its wireless service. These phones are not sold to customers, but are offered to customers for free, at a nominal charge, or at a discount. None of these facts have been denied.
Unwired Telecom Corp., formerly known as U.S. Unwired, Inc., and successor in interest by merger to Mercury Cellular Telephone Company, filed a petition for recovery of taxes paid under protest on April 20, 2001. The Calcasieu Parish School Board assessed Unwired with sales and use taxes and interest and penalties in the amount of $1,108,794.47 for the taxable period that began on January 1, 1996, and ended on December 31, 1999. Just as in Mercury, Unwired argued that the taxes were based on the retail sales price paid by the customer from sales of wireless telecommunications equipment. Unwired argued that it properly collected and remitted taxes on the sales of the wireless telecommunications equipment during the taxable periods in question. In the alternative, Unwired argued that the School Board improperly computed the taxes based on the wholesale price paid by it for the equipment instead of the "cost price." Unwired also argued that the maximum amount of interest, penalties, and attorney's fees that could be assessed against it was 15%, citing Elevating Boats, Inc., 795 So.2d 1153.
The School Board filed a motion for summary judgment arguing that it is clear that Mercury applies to the facts of this case and the assessment was proper. A hearing was held on February 15, 2002. The trial court agreed that Mercury applied, but also found that Elevating Boats applied. It, therefore, granted the School Board's motion for summary judgment and ordered Unwired to pay all taxes assessed against it. However, the trial court dismissed the School Board's assessment of penalties and denied its request for attorney's fees and ordered a refund in the amount of $162,696.94. Both parties appealed the judgment.
After the parties appealed, the Louisiana Legislature passed Act 85 in the 2002 session enacting La.R.S. 47:301(10)(v), (13)(g) and (h), and (18)(i), relative to sales and use taxes. Declaring that these sections were "all new law," Act 85 provided for the definitions of "retail sale" or "sale at retail," "sales price," and "use." It also established a new method for calculating the sales price for imposition of sales and use tax.
Contrary to the opinion of this court expressed in Mercury, the legislature expressed its opinion that providers of cellular, PCS, or wireless communication devices are exempt from sales and use tax in Section 3 as follows and that the new law is interpretative:
The provisions of Section 1 of this Act are interpretative of R.S. 47:301(10), *857 (13), and (18) for all taxable periods that ended prior to January 1, 2001, and are intended to explain and clarify their original intent, notwithstanding the contrary interpretation given in "Calcasieu Parish School Board v. Mercury Cellular Telephone Company"[Mercury Cellular Telephone Company v. Calcasieu Parish School Board], XXXX-XXXX (La.App. 3 Cir. 12/13/00), 773 So.2d 914, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 314, and all cases consistent therewith. Therefore, the provisions of Section 1 of this Act shall be applicable to all claims existing or actions pending for any taxable period prior to January 1, 2001, and to all claims arising or actions filed on and after its effective date....
The legislature then enacted several new sections in which it clarified the intent of the law. Louisiana Revised Statute 47:301(10)(v) provides that a "retail sale" or "sale at retail" includes the:
sale or any other disposition of such cellular, PCS, or wireless telephone, any electronic accessories that are physically connected with such telephones and personal communication devices by the dealer to the purchaser, but shall not mean or include the withdrawal, use, distribution, consumption, storage, donation, or any other disposition of any such cellular, PCS, or wireless telephone, any electronic accessories that are physically connected with such telephones and personal communication devices by the dealer.
Louisiana Revised Statute 47:301(13)(g) provides that "sales price" is:
only the amount of money, if any, actually received by the dealer from the purchaser for each such cellular, PCS, or wireless telephone and any electronic accessories that or [sic] physically connected with such telephones and personal communication devices, but shall not include (i) any amount received by the dealer from the purchaser for providing mobile telecommunications services, or (ii) any commissions, fees, rebates, or other amounts received by the dealer from any source other than the purchaser as a result of or in connection with the sale of the cellular, PCS, or wireless telephone, any electronic accessories that are physically connected with such telephones and personal communication devices.
The term "use" is defined in La.R.S. 47:301(18)(i) as not including "the withdrawal, use, distribution, consumption, storage, donation, or any other disposition of any such cellular, PCS, or wireless telephone, any electronic accessories that are physically connected with such telephones and personal communications devices by the dealer."
There is no doubt, but for the passage of Act 85, this court would find that summary judgment in favor of the School Board was appropriate based on Mercury. The issue is whether the legislature acted properly in declaring that Act 85 is interpretative and should be applied retroactively while specifically overruling this court's interpretation of the law as it existed.
The School Board argues that Act 85 cannot produce a different result in this case for several reasons. It argues three constitutional violations: (1) it impermissibly relieves Unwired's obligation to Calcasieu Parish in violation of La. Const. art. 7, § 15; (2) it impermissibly abbreviates the prescriptive period to less than three years in violation of La. Const. art. 7, § 16; and (3) it creates nonuniform sales tax exclusions in violation of La. Const. art. 6, § 29(D).
It is widely recognized in Louisiana that constitutional attacks must be raised in the trial court, not the appellate court, *858 and the constitutional challenge must be specially pleaded and the grounds for the claim particularized. Vallo v. Gayle Oil Co., Inc. 94-1238 (La.11/30/94), 646 So.2d 859. However, there is a recognized exception "when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court." Mosing v. Domas, 02-12 p. 11, (La.10/15/02), 830 So.2d 967, 975, fn. 2. Therefore, we will address the constitutionality of Act 85 on appeal.
"Statutory interpretation and the construction to be given to legislative acts is a matter of law and rests with the judicial branch of the government." Bourgeois v. A.P. Green Indus., Inc., 00-1528, p. 11(La.4/3/01), 783 So.2d 1251, 1260. "[W]hen this court interprets legislative acts, it is giving meaning in particular cases to what the legislature has enacted as law; it is saying what the law is." Id. The supreme court also recognized and quoted Justice Dennis' compelling logic in St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 822 (La.1992):
Under our system of government with limited powers, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch 175[5 U.S. 137], 177, 2 L.Ed. 60 (1803) (Marshall, C.J.). Within the judicial department, this court is the final arbiter of the meaning of the state constitution and laws. Therefore, after this court has said what a law means, legislative action adopting a different meaning necessarily effects a change and not an interpretation of that law.
... Planiol also cautions against the lawmaker misusing his right of interpretation "in giving the name of `interpretive law' to laws which contain new provisions." 1 M. PLANIOL, TREATISE ON THE CIVIL LAW, § 251 (La.St. L.Inst.Trans.1959). See also St. Paul Fire & Marine, 609 So.2d at 819 ("Of course, it is a different matter when the legislature actually amends previously enacted legislation by laws designated as interpretive. This again may be an improper exercise of power tending to attribute, contrary to constitutional guarantees, retroactive effect to new legislation.") (quoting Yiannopoulos, Validity of Patents Covering Navigable WaterbottomsAct 62 of 1912, Price, Carter and All That, 32 La.L.Rev. 1, 16 (1971)).
Bourgeois. at 1258-59, fn 8.
The School Board argues that Act 85 impermissibly extinguishes Unwired's tax obligation because La. Const. art. 7, § 15 provides in pertinent part that "the legislature shall have no power to release, extinguish, or authorize the releasing or extinguishing of any indebtedness, liability, or obligation of a corporation ... to the state, a parish, or a municipality." This constitutional provision relative to debts and obligations includes taxes. Huggett v. Montgomery, 167 So. 147 (La.App. Orl.1936).
Unwired and the attorney general argue that this court's definition of a use tax as applied to wireless communication companies is not a correct interpretation of the law at the time Mercury was decided so the enactment of Act 85 did not release or extinguish an existing obligation because none existed. We disagree. This court did not create the tax in Mercury as suggested by Unwired. We simply interpreted the law as it was written by the Legislature as it is the judiciary's function to do. The Legislature cannot create a new substantive law under the guise of interpretative legislation in order to give it retroactive effect because it does not like the result of its legislation as it stands. *859 Interpretation of the law is a judiciary function.
We find that Act 85 is clearly substantive law because it altered existing tax obligations when it redefined "sales" and "use". This was clearly a violation of La. Const. art. 7, § 15. McNamara v. Bayou State Oil Corp., 589 So.2d 1099 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1335 (La. 1992). Therefore, we find that Act 85 cannot be applied retroactively to extinguish any debts that Unwired owed prior to the enactment of new law which redefined "sales" and "use" for tax purposes as it is in violation of La. Const. art. 7, § 15. We also find that any attempt to effectuate a compromise in Section 3 pursuant to the "Amnesty Program" found in Section 4 is invalid because the new law cannot be applied retroactively, so there is nothing to compromise.

VALUE OF CELLULAR PHONES
Unwired argues that if this court finds Act 85 is inapplicable, that summary judgment was still improper because there are issues as to the proper "cost price" upon which Unwired's use tax obligation should be based. It claims that the proper measure upon which its use tax should be based is the reasonable market value of each cellular phone at the moment the cellular phone is removed from inventory and sold to a customer and not the actual cost Unwired paid for the cellular phone. It argues that the reasonable market values of the cellular phones transferred by Unwired is the actual transaction value agreed to between Unwired and its customers, i.e., the actual retail sales price paid by the customer. Unwired argues that in charging a discounted price, it was acting in a manner consistent with the other cellular providers in the local market area.
These are the same arguments that were made in Mercury even though Unwired attempts to express it differently. In Mercury, this court noted that a certificate of resale was presented certifying that the cellular phones were purchased for resale, and Mercury was not charged sales tax, thereby avoiding double taxation. However, Mercury failed to resell some of the phones and failed to collect the appropriate taxes.
Unwired argues that it cannot compete with other cellular companies who also give away phones or include them as part of a package. However, this argument fails because these companies should have also paid use tax for these telephones under the terms of Mercury. We agree with the trial court that Mercury applies to this case, and therefore, summary judgment was appropriate.

PENALTY
School Board Ordinance Section 6.09 authorizes the collection of 15% interest per annum on outstanding taxes, plus a penalty in the amount of 25% of the outstanding taxes, plus 10% in attorney's fees based upon the total amount owed; principal, interest, and penalties. Pursuant to the supreme court's decision in Elevating Boats, 795 So.2d 1153, the trial court dismissed the School Board's assessment of penalties and request for an award of attorney's fees. The School Board appealed this judgment.
In Elevating Boats, the supreme court held that a parish's combined interest, penalties, and attorney's fees could not exceed the 15% interest penalties permitted by La.R.S. 33:2746. Later in Stowe-Woodward Co. v. Lincoln Parish Sch. Bd., 36,100 (La.App. 2 Cir. 6/14/02), 821 So.2d 694, writ denied, 02-2339 (La.11/22/02), 829 So.2d 1049, the second circuit noted that the supreme court had not addressed *860 La.R.S. 47:1512, the attorney's fees provision, which provides for an award of attorney's fees in addition to the interest penalty set forth in La.R.S. 33:2746. The second circuit affirmed the trial court's award of attorney's fees in addition to interest on the tax due.
More recently, this court also addressed this very issue in Anthony Crane Rental, L.P. v. Fruge, 02-635 (La.App. 3 Cir. 12/11/02), 833 So.2d 1070. In Anthony Crane Rental, the trial court, following a hearing on a motion for new trial, relied on Elevating Boats and only allowed 15% in interest and 10% in attorney's fees and abated a 25% penalty. On appeal, this court agreed with the second circuit that the supreme court's decision had failed to address La.R.S. 47:1512, but felt constrained to follow the pronouncement of the supreme court in Elevating Boats and held that the combined interest, penalties, and attorney's fees could not exceed the 15% penalty permitted by La.R.S. 33:2746. Relying on our decision in that case, we find that the trial court was correct in holding that the penalties, interest, and attorney's fees cannot exceed 15% and, thereby, dismissing the School Board's assessment of penalties and request for attorney's fees and ordering a refund of penalties.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to Unwired Telecom Corporation and Calcasieu Parish.
AFFIRMED.
THIBODEAUX, J., specially concurs and assigns written reasons.
THIBODEAUX, J., specially concurring.
I fully agree with the majority opinion. However, with respect to the impact of Act 85 on this litigation, I refer to my concurring comments in Crooks v. Metropolitan Life Ins. Co., 00-947 (La.App. 3 Cir. 1/17/01); 779 So.2d 966. Although Crooks was vacated and set aside on the grounds of prematurity, Crooks v. Metropolitan Life Ins. Co., 01-466 (La.5/25/01); 785 So.2d 810, my views concerning the proper function of the legislative branch have not changed and are set forth with specificity in my concurring opinion in Crooks to which I still fully subscribe.