847 So.2d 800 (2003)
Nathan FREEMAN
v.
Kevin TATE, Bill Ortego and Wayne Morein.
No. 02-1361.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
Sera Hearn Russell III, Attorney at Law, Lafayette, LA, for Plaintiff/Appellant, Nathan Freeman.
*801 Michael Voorhies Matt, Eunice, LA, for Plaintiff/Appellant, Nathan Freeman.
Lisa Eve Mayer, Borne, Wilkes & Brady, LLP, Lafayette, LA, for Defendants/Appellees, Kevin Tate, Bill Ortego and Wayne Morein.
Court composed of SYLVIA R. COOKS, JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, MARC T. AMY and BILLY HOWARD EZELL, Judges.
EZELL, Judge.
This appeal involves a pedestrian who was struck by a drunk driver while detained by two Evangeline Parish Sheriffs' Deputies. The pedestrian, Nathan Freeman, sued the deputies and the sheriff. The trial court dismissed the suit on summary judgment. Freeman appeals. For the following reasons, we affirm the decision of the trial court.
On December 25, 2000, at about 4:00 a.m., Freeman and his cousin were walking along Louisiana Highway 29 in a northerly direction, toward Ville Platte. At that time, Sheriffs' Deputies Kevin Tate and Bill Ortego were driving on the same highway in a southern direction in an Evangeline Parish Sheriff's Department patrol car. Earlier in the evening, the deputies had been notified that a black male had escaped from the jail and that all units should be on the lookout for the escapee. Upon seeing Freeman and his cousin, both black males, walking alongside the road at such a late hour, the deputies turned their vehicle around to investigate. They did so in order to determine if either Freeman or his cousin was the escapee, or if they were stranded and in need of assistance.
The deputies pulled up behind the men, facing north in the southbound lane, partially on the road and partially on the shoulder. They then turned on their overhead rotator lights and alternating flashing headlights. Freeman and his cousin were asked to step toward the cruiser. They complied. As the deputies were questioning the two men, the cousin saw a vehicle approach at a high rate of speed. He shouted to warn everyone as the vehicle got closer. The approaching vehicle, driven by Daniel Thomas, veered to the right, narrowly avoided the patrol car, and struck Freeman, severely injuring his leg. After he got out of his vehicle, Thomas was immediately taken into custody and charged with driving while intoxicated. His blood alcohol level was later found to be .135 on the blood alcohol test.
Freeman sued the deputies and the sheriff, claiming the deputies were negligent in their parking of the police cruiser, and that this negligence caused the accident. Freeman settled with Thomas and his insurer out of court. The deputies filed a motion for summary judgment, claiming their actions were not negligent under La. R.S. 32:24, and that the accident was the sole fault of the drunk driver, Daniel Thomas. The trial court granted the summary judgment in favor of the deputies, dismissing the suit. From this decision, Freeman appeals.
On appeal, Freeman asserts two assignments of error, which are essentially one, that the trial court erred in granting the summary judgment, as he claims genuine issues of material fact exist, and the trial court misinterpreted the provisions of La. R.S. 32:24. We disagree.
An appellate court reviews summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. Schroeder v. Bd. of Supervisors of Louisiana State Univ., 591 So.2d 342 (La. 1991); Haley v. Calcasieu Parish Sch. Bd., 99-883 (La.App. 3 Cir. 12/8/99), 753 So.2d 882, writ denied, 00-54 (La.2/24/00), 755 So.2d 242. Article 966(B) of the Louisiana Code of Civil Procedure provides that *802 summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Accordingly, this is the standard which we will apply.
Louisiana Revised Statute 32:24 states, in pertinent part:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;....
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
The Louisiana Supreme Court recently addressed the standard of care to be applied to an emergency vehicle driver who qualifies under the provisions of La.R.S. 32:24(A) through (C) in Lenard v. Dilley, 01-1522, pp. 6-7 (La.1/15/02), 805 So.2d 175, 180.
La.Rev.Stat. 32:24(D) sets out two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev. Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by a standard of "due care."
"Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise." State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942). "Reckless disregard" or "gross negligence" is the standard to be applied if the emergency vehicle driver's actions fit La.Rev.Stat. 32:24(A) through La. Rev.Stat. 32:24(C). Otherwise, the standard is ordinary negligence.
Thus, if the provisions of subsections A, B and C of La.Rev.Stat. 32:24 apply to the accident or incident in question, then the driver will be held liable only for his conduct which constitutes reckless disregard for the safety of others.
The deputies, in investigating whether either Freeman or his cousin was potentially the wanted escapee, were clearly in pursuit of a suspected violator of the law. It is undisputed that the deputies activated their overhead lights and flashing headlights, in compliance with subsection C. Therefore, under subsection B(1), the deputies were able to park their vehicle in violation of the ordinary rules of the traffic code. Because the deputies had met the requirements of subsections A, B, and C of La.R.S. 32:24, they can be held liable only for conduct that constituted reckless disregard for the safety of others.
We find that their conduct did not constitute gross negligence. The officers *803 were investigating whether either Freeman or his cousin was the jail escapee. They pulled their cruiser as close to the men as possible to avoid further escape if the men fled. The road in question had a very small shoulder, preventing the deputies from pulling completely off the road. They engaged their flashing lights, as required by La.R.S. 32:24. The position of the police car did not constitute gross negligence or reckless disregard for the safety of others, as an approaching vehicle could have seen the lights of the patrol car and could have proceeded with appropriate caution. Even Thomas admitted that he saw the lights on the patrol car as he approached.
This accident was caused solely by the actions of Daniel Thomas. As noted above, Thomas saw the lights of the deputies' car as he approached them on the road. However, Thomas testified in his deposition that he "blanked out" or fell asleep after seeing the lights. Thomas testified that he awoke to find his "foot was gassing" the accelerator and that he had slid off of the road. Thomas stated that he did not try to swerve to avoid the patrol car but that he drifted off the road because he was asleep or blacked out. He said his only chance to avoid the cruiser was to "stay on the side of the ditch." Thomas did not even know that he had struck Freeman until he was told afterwards. Clearly this accident was caused by Thomas's drunk driving, not the actions of the deputies. Accordingly, we find that there is no genuine issue of material fact in this case.
The decision of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Mr. Freeman.
AFFIRMED.
COOKS, J., dissents and assigns written reasons.
WOODARD, J., dissents. As addressed by Judge Cooks, there are numerous material facts in dispute, anyone of which should preclude summary judgment.
COOKS, Dissenting.
The majority proposes to affirm the trial court's grant of summary judgment finding there was no genuine issue of fact that the deputies met the requirements of La.R.S. 32:24 and their conduct did not constitute gross negligence. I disagree.
I find serious questions arise as to whether the officers were in "pursuit of an actual or suspected violator of the law" as R.S. 32:24 states. Deputy Tate stated he was driving Deputy Ortego home when they ran across the two black men walking on the side of the road. Deputy Ortego stated neither of the men were stopped because they were engaged in any criminal activity. There also is no indication that the two men bore any resemblance to the escapee other than the color of their skin. The depositions do not provide any indication if there was any description of the escapee issued by the authorities. Such a question certainly pertains to the issue of whether the police were "in the pursuit of an actual or suspected violator of the law," or whether there declarations are merely pretextual.
As to the question of gross negligence, I find this issue cannot be properly addressed via summary judgment. There are numerous questions of fact precluding summary judgment. The majority concludes there is no question that the positioning of the police car did not constitute gross negligence. I note there was a dispute as to the visibility conditions that evening. Daniel Thomas testified in his deposition that it was a "clear night." *804 Deputy Tate recalled it was "misty." Deputy Ortego remembered it as being "foggy" and stated he was concerned that, because of the fog, the two men "might have got hit by a car." I also point to the police report prepared by Deputy Ortego. In the drawing it shows Deputy Ortego and Frederick Freeman were standing to the right of the parked police unit and in the other lane of travel. Clearly, the presence of Deputy Ortego and Frederick Freeman in the other lane could have prevented an oncoming vehicle from using that lane to avoid the parked police unit. Although Thomas stated in his deposition that he "blanked out" or fell asleep after seeing the police lights, Thomas' deposition testimony is riddled with inconsistencies. Thomas stated numerous times in his deposition that the police unit "wasn't on the road" and was "off the road completely." This is contradicted by both Deputy Tate and Ortego, as well as the police report. The shoulder was sloped and only two to two and a half feet wide, not nearly wide enough for a vehicle to park completely off the road.
The majority states that "Thomas admitted that he saw the lights on the patrol car as he approached." Thomas did testify as such in his deposition, however the police report reflects that Thomas stated "he did not see the EPSO (Evangeline Parish Sheriffs Office) unit nor the blue and red overhead lights. He stated he attempted to avoid colliding with the pedestrian, but could not avoid the collision." (Emphasis mine)
Thomas also testified in his deposition that he "blanked out" and awoke to find his foot was "gassing" the accellerator. However, Deputy Tate testified he heard "wheels squeeling like he was applying brakes, and at that point, I could tell, you know, that he wasn't stopping, or he was having problems stopping."
Despite Thomas' statements as memorialized in the police report, Thomas stated in his deposition that he did not discuss the accident that night with anyone, including the police. Thomas also stated in the police report that "he attempted to avoid colliding with the pedestrian" but stated in his deposition that he did not even realize he had struck anyone until he was told so later. Thomas also asserted he saw only "blue" lights; the officers said the lights were blue and red. At the scene, Thomas told Deputy Ortego he saw no lights, but at his deposition stated he saw the tail lights of the police unit even though the police report indicates this was impossible because of the unit's position at the time of the accident.
One of the deputies, by his own admission, thought "visibility" was so hampered, that he feared the young men "might have got hit by a car." With this admitted "fear" and knowledge of the diminished visibility conditions, the officers nevertheless elected to park their unit and conduct the investigatory stop in a manner that significantly contributed to the danger they already knew existed: That the young men "might get hit by a car." Now, the young men were not on the shoulder, where they might, through haste, have avoided the danger. They were forced to remain in the actual lanes of travelone in each laneand to remain in the path of danger held by the deputies, who both admitted at the time the car approached each of them was being patted down and restrained against the vehicle. Although the deputy holding Nathan Freeman could see the car approaching and made good his escape when alerted by Frederick Freeman, Nathan was still up against the police unit with his back to the approaching danger. This prevented Nathan from moving and changing position. Nathan could do nothing to see or escape the danger. A *805 serious question does exist concerning whether the deputies method of placing the two men at greater risk constituted "gross negligence."
After reviewing the depositions and police report, I find at a minimum, there were questions of material fact which should have precluded summary judgment. Further, Thomas credibility and that of the officers vis-a-vis Thomas is seriously at issue. Therefore, I would reverse the trial court's grant of summary judgment on both the immunity question and the gross negligence question.