PEATROSS, J.
_]jThis case arises from an automobile accident that occurred on December 13, 2003, when a vehicle driven by Josh Hunter stalled on the 1-220 West bridge over Cross Lake in Shreveport, Louisiana, and was hit by a vehicle driven by Mary Cren-shaw. As a result of the accident, Mr. Hunter sustained numerous and severe injuries. He sued Mrs. Crenshaw, the City of Shreveport (“the City”) and Officer Theo Jenkins of the Shreveport Police Department (“SPD”)[1] for his injuries. Similarly, Mrs. Crenshaw, through her curator, Mark Crenshaw, sued the City and Officer Jenkins.[2] The suits were consolidated.
After a trial on the merits, the trial judge found that Mr. Hunter had failed to prove his case against the City and Officer Jenkins under a gross negligence standard of review. Accordingly, the trial court held that Mr. Hunter was not entitled to damages. From this ruling, both Mrs. Crenshaw and Mr. Hunter appeal, urging several assignments of error. For the reasons set forth herein, we affirm.

FACTS

On December 13, 2003, Mr. Hunter’s 1979 Ford truck stalled in the right lane of travel as he was crossing the Cross Lake Bridge in Shreveport. He was unable to push, pull or otherwise move it from the lane of traffic. Upon noticing the stalled vehicle, Ryan Nebus, an unrelated motorist, stopped his ear on the side of the road (out of the lane of travel) to assist Mr. Hunter. Despite their efforts, the pair was still unable to move the truck [ 2from the lane of traffic. Officer Jenkins was dispatched to the scene under a “priority two”[3] call.
When Officer Jenkins arrived on the scene, he parked his patrol car on the shoulder of the highway behind Mr. Ne-bus’ vehicle rather than directly behind the stalled truck. The officer did not place any road cones, flares or similar warning devices behind the truck, on the road or around the stalled vehicle. After he was assured that the truck could not be manually moved, Officer Jenkins granted Mr. Hunter permission to retrieve something from the truck and began to walk back towards his patrol car. Officer Jenkins made no effort to monitor, warn or control traffic at this time. Soon after he had gone back to his truck, the 1997 Chevrolet truck driven by Mrs. Crenshaw crashed into the back of Mr. Hunter’s stalled truck. *302 Immediately following the crash, Officer Jenkins maneuvered his vehicle behind the trucks to block traffic. Mr. Hunter was injured after being trapped underneath the truck and dragged a “considerable distance” down the highway. The vehicle had to be mechanically lifted off of him and he was air-lifted to the hospital.
After a trial on the merits, the trial court found Mr. Hunter failed to prove his case against the City of Shreveport and Officer Jenkins under a gross negligence standard.[4] The trial court held that he was not entitled to damages due to his failure to satisfy the aforementioned standard. From this ruling, both Mrs. Cren-shaw and Mr. Hunter appeal, urging several assignments of error.

DISCUSSION

[5]

The trial court committed legal error in applying a gross negligence standard in this case thus entitling appellants to de novo review.

The trial court committed prejudicial error in applying an improper legal standard to the conduct of Officer Jenkins. The trial court applied a reckless disregard/gross negligence standard, when the proper standard was simple negligence.

[6]

Mr. Hunter first argues that the trial court failed to properly apply La. R.S. 32:24, which states:
A.The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for [¿the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
Mr. Hunter points out that, for La. R.S. 32:24 to apply, all three subsections must *303 be met. He cites Lenard v. Dilley, 01-1522 (La.1/15/02), 805 So.2d 175, which stated that, if an emergency vehicle driver’s conduct does not fit within subsections A, B or C of the aforementioned statute, that driver’s actions will be gauged by an ordinary negligence standard.
Accordingly, Mr. Hunter argues that subsection A, supra, was not met because Officer Jenkins’ actions suggest that he was not responding to an “emergency” within the meaning of this statute. He asserts that, on his arrival at the scene, Officer Jenkins did not follow typical police protocol for an emergency, such as controlling traffic, exceeding posted speed limits, illuminating his lights or blocking off the stalled vehicle with his patrol car.
Similarly, Mr. Hunter argues that subsection B of the statute, supra, was not met in this case. He contends that Officer Jenkins was negligent by failing to park his patrol car behind Mr. Hunter’s stalled vehicle, setting out road cones, illuminating his cruiser’s lights or the like, and states that “none of these omissions are enumerated or protected by La. R.S. 32:24.”
In summation, Mr. Hunter contends that La. R.S. 32:24 does not apply in this case and that Officer Jenkins’ actions should be analyzed under an ordinary negligence standard.
The City responds by citing Orea v. Scallan, 32,622 (La.App. 2d Cir.1/26/00), 750 So.2d 483, which provides the applicable standard of review for this case on appeal, stating:
A district court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly | fiwrong or manifestly erroneous. Under the manifest error standard, the linchpin is whether the trial court’s findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court’s findings cannot be reversed if they are in fact reasonable. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as a trier of fact it would have ruled differently. A finding of fact by a trial court should be upheld unless it is clearly wrong.
When findings of fact are based upon evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Only the fact finder can be aware if the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. (Citations omitted.)
The City further contends that Mr. Hunter had the responsibility to remove his vehicle from the lane of travel and failed to do so. See, La. R.S. 32:141. To this end, the City asserts that the trial court was correct in ruling that Mr. Hunter took no steps to satisfy his legal burden by moving his stalled truck.
The City notes that Mrs. Crenshaw testified to having seen the red and blue lights of Officer Jenkins’ patrol car prior to hitting Mr. Hunter’s stalled truck. It cites La. R.S. 32:125(B)(1), which calls upon a driver who is approaching an authorized emergency vehicle with its lights illuminated to slow their speed to 25 m.p.h. and move to the lane farthest from the emergency, until it is safe to proceed at a higher rate. The City further notes that, in this case, Mrs. Crenshaw was traveling at or near 60 m.p.h. when she hit Mr. Hunter’s truck. In this respect, it argues that Mrs. Crenshaw, not Officer Jenkins, *304 bears the brunt of the responsibility in this matter.
The City cites La. R.S. 32:24, supra, and states that the supreme court has ruled that an officer is only considered negligent under this statute if 1 (¡his/her actions constitute reckless disregard for the safety of others. See also, Lenard, supra. It points out that “gross negligence” is defined as “the want of even slight care and diligence.” Similarly, the City further notes that “the scope of an officer’s duty to act reasonably under the circumstances does not extend so far as to require that the officer always choose the ‘best’ or even the ‘better’ method of approach.” See, Dorty v. City of Pineville, 01-1470 (La.App. 3d Cir.4/3/02), 815 So.2d 393, writ denied, 02-1271 (La.8/30/02), 823 So.2d 950. It points out that only 70 seconds elapsed between Officer Jenkins’ arrival at the scene and the actual crash. Accordingly, it argues that there was insufficient time for him to take further steps at the scene, as prescribed by the SPD Field Training Manual. In summation, the City argues that Officer Jenkins’ conduct in the case sub judice did not rise to the level of gross negligence. We agree.
We first conclude that Officer Jenkins was responding to an emergency in this situation and that the gross negligence standard of review is applicable to this case. As discussed, supra, all three sections of La. R.S. 32:24 must be met for the statute to apply. A stalled truck on an interstate bridge at night constitutes such an occasion as to require emergency response. Here, the officer was dispatched under a “priority two” or “emergency” call as prescribed by the SPD, and such a response is covered by section A of La. R.S. 32:24. It is undisputed in the record that the officer employed his overhead lights prior to arriving on the scene in compliance with section C of the statute. Finally, the record reflects that, when Officer Jenkins arrived at the scene, he parked his patrol cruiser behind the Good Samaritan’s vehicle in compliance with section B of the statute. Once Officer Jenkins got a grasp on what had occurred and neededJjjto be done — which covered a very small window of time — he returned to his cruiser and this accident occurred. After seeing the accident, he placed his cruiser behind the vehicles involved and reacted appropriately. Accordingly, all three sections of La. R.S. 32:24 are met in this case; and, thus, the gross negligence standard of review applies.
We next rule that Officer Jenkins’ actions (or inactions) did not rise to the level of gross negligence in the case sub judice. As discussed, supra, he arrived at the scene, parked behind the first car on the side of the road (which he came to that is, Mr. Nebus’ vehicle) and surveyed the situation. From these facts, we cannot say that Officer Jenkins’ actions rose to the level of “reckless disregard” for the safety of Mr. Hunter and Mr. Nebus, nor that his actions showed “the want of even slight care and diligence,” per Lenard, supra. For these reasons, we agree with and affirm the trial court’s ruling on this issue. The trial court erred in allowing and relying upon the expert opinion testimony of Officer Gayle McFarland.

The trial court committed prejudicial error in allowing improper, inadmissible, unfairly prejudicial expert testimony.

[7]

Mr. Hunter next argues that the trial court erred by accepting the expert testimony of Officer Gayle McFarland, of *305 the SPD’s Accident Investigation Unit. He contends that Officer McFarland was unqualified to give expert testimony as he has never been certified as an expert before, possesses no scientific or mathematical expertise and has no training in accident reconstruction. Mr. Hunter also points out that, in spite of numerous objections to the contrary, Officer McFarland was allowed to [^testify as to the legal cause of this accident when he stated that Mr. Hunter and Mrs. Crenshaw had violated several Louisiana statutes.
Mr. Hunter cites Whetstone v. Dixon, 616 So.2d 764 (La.App. 1st Cir.1993), writ denied, 623 So.2d 1333 (La.1993), which held that, if a police officer is not qualified as an accident reconstruction expert, his testimony in the form of opinions is limited to those opinions based upon his rational perception of the facts and recollections pertaining to the scene of the accident. He cites Maricle v. Liberty Mutual Ins. Co., 04-1149 (La.App. 3d Cir.3/2/05), 898 So.2d 565, which held it to be prejudicial error to allow an investigating officer who is not an expert in accident reconstruction to give opinions on crucial fact determinations concerning liability when the officer did not witness the accident. In Maricle, supra, the court of appeal, on similar facts, ruled that it was error for a police trooper to give his opinion on matters like these and granted the plaintiff a de novo review of the trial court’s factual findings. From this line of jurisprudence, Mr. Hunter argues that the trial court’s willingness to accept Officer McFarland’s testimony regarding crucial facts of the case at trial, above several objections, is reversible error.
The City responds that the trial court properly allowed Officer McFarland to testify as an expert. It points out that the officer has 19 years of experience in the SPD and that he was well qualified to testify regarding the accident and applicable statutes. The City asserts that expert witness testimony is governed by Louisiana Code of Evidence Article 702, which states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by 13knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The City cites State v. Langely, 95-1489 (La.4/14/98), 711 So.2d 651, for the proposition that a trial court is vested with broad discretion in ruling on the scope of expert testimony.
The City further asserts that Mr. Hunter’s reliance on Maricle, supra, is “wholly misplaced.” It states that the court of appeal found prejudicial error in that case because the responding officer was very inexperienced and, thus, did not meet the requirements for testifying as an expert at trial. We agree.
Our review of the record reflects no error by the trial judge in allowing Officer McFarland to testify as he did at trial. We first note that, as stated in Langley, supra, the trial judge is afforded broad discretion in allowing a witness to testify. Similarly, Louisiana Code of Evidence article 702, supra, states that the purpose of expert witness testimony is to assist the trier of fact in understanding the facts and/or evidence at issue in a case. Officer McFarland had 19 years of experience with the SPD, including certification in vehicle investigation and supervisory experience with the Accident Investigation Unit. Included in his experience has been 130 traffic fatalities, 6,000 “hit and runs” and 80 non-fatal accidents. In our view, when taken as a whole, his experience and *306 education qualified Officer McFarland to testify as an expert in this case.
Mr. Hunter argues that Maricle, supra, a third circuit case, is instructive on, and similar to, the case sub judice. We disagree. The court in Maride found prejudicial error by the trial court because the | inresponding/testifying officer was very inexperienced at the time of the accident. The court in Maricle, supra, stated, in pertinent part:
Trooper Mire was a rather inexperienced officer at the time of the accident. He had graduated from the Louisiana State Police Academy just six months earlier and was still in the supervisory or probationa'i'y period of his career. Although he testified that he was not an expert in accident reconstruction, the trial court allowed him, by reference to his accident report, to testify that Ms. Maride was inattentive and distracted at the time of the accident and that had she not been so, she would have seen the eighteen-wheeler as it approached. The trial court based the admissibility of this opinion on the trooper’s “experience as a police officer and his training.”
With regard to the cause of the accident, Trooper Mire testified that he noted on his accident report that the “harmful event” in the accident was the movement of Ms. Maricle’s vehicle. Additionally, Trooper Mire was allowed to testify, not that he gave Ms. Maride a traffic citation for an unsafe left turn, but that she committed an unsafe left turn. (Emphasis removed and emphasis ours.)
Unlike Maricle, supra, and as discussed at length above, Officer McFarland had ample experience as an investigative officer with the SPD, including more than 6,000 total investigations. Accordingly, we find Mr. Hunter’s reliance on Maricle, supra, is misplaced.
In summation, we conclude that Officer McFarland’s knowledge of vehicle accidents and lengthy experience with the SPD qualified him to testify in the case as an expert. Similarly, it is clear that, per Louisiana Code of Evidence Article 702, supra, his testimony was instructive and helpful to the trier of fact in this case. We, therefore, find no error here and reject this assignment of error.

The trial court erred in finding Officer Theo Jenkins to be completely free from fault in causing or contributing to the accident.

\nThe trial court committed legal error in finding no negligence on the part of Officer Jenkins and the City.

[8]

Alternatively, the trial court erred in failing to find gross negligence on the part of Officer Jenkins.

Alternatively, the trial court’s factual findings were manifestly erroneous and not supported by the evidence.

In his next assignments of error, Mr. Hunter argues that the trial court erred by finding Officer Jenkins free of fault or not grossly negligent in this case. He reasserts his position that the proper legal standard in this case is ordinary negligence. He cites Davis v. Witt, 02-3102 (La.7/2/03), 851 So.2d 1119, in which the court stated that, when a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see that motorists are not subjected to unreasonable risks of harm. Mr. Hunter further contends that, even assuming, ar-guendo, that Officer Jenkins’ conduct was *307 properly governed by a gross negligence standard, the trial court’s ruling that his actions were not grossly negligent was still manifestly erroneous.
Mr. Hunter contends that Officer Jenkins took no precautions to control traffic at the scene. He notes that, upon receiving the dispatch, the officer was told what to look for and that the video tape (which was introduced at trial) reflects that he had an appreciation for what had occurred. Mr. Hunter further asserts that, according to the SPD Field Training Manual, a responding officer should “reposition [his/ her] patrol unit as needed” prior to attempting to remove vehicles from the lane of 11 ¿traffic. He also points to the following colloquy between his attorney and Officer Jenkins at trial:
Q: Isn’t it true that the field training manual says that you’re supposed to reposition your vehicle if needed prior to attempting to clear vehicles out of the roadway?
A: Yes, sir, that’s what the manual says.
From this, Mr. Hunter reasserts that Officer Jenkins was negligent in handling the stalled vehicle and argues that, had the officer positioned his car (or provided other safety precautions) as provided for in the SPD manual, the accident would have been avoided.
The City next responds that Mr. Hunter’s assertion that this accident would have been avoided had Officer Jenkins positioned his car behind the stalled truck is misplaced. It argues that, had Mrs. Cren-shaw slowed from her 60 m.p.h. rate of speed on the Cross Lake Bridge, she might have had more time to react to the stalled truck and avoid this accident altogether. It notes that some “five (5) or more” motorists passed the stalled truck without consequence or accident.
In summation, the City reasserts that Officer Jenkins’ actions did not rise to the level of gross negligence, and, accordingly, that this assignment of error is without merit. We agree.
• Our review of the record reflects that it was the negligence of Mrs. Crenshaw, not that of Officer Jenkins, that was the cause of this accident. Moreover, as seen, supra, nothing in this record convinces us that the officer’s actions, or inactions, were grossly negligent or reflected the “want of slight care or regard” for the safety of Mr. Hunter, Mr. Nebus or any passing motorists.
| 1 .¡Officer Jenkins arrived at the scene and placed his patrol vehicle behind the first car he saw on the Cross Lake Bridge that of Mr. Nebus. After surveying the situation, he returned to his cruiser to undertake further action and, before any such action could be taken, Mrs. Crenshaw hit Mr. Hunter’s truck. Although he should have seen the Hunter vehicle immediately, nothing the officer did (or did not do) constituted gross negligence in the case sub judice. Given this, and considering that numerous other motorists were able to pass the truck and patrol car without incident, we find this assignment of error to be without merit.

The trial court erred in finding Officer Theo Jenkins to be completely free from fault in allowing Josh Hunter to return to his vehicle without first insuring that it was safe to do so

Mr. Hunter next argues that Officer Jenkins had a duty to protect him from harm once he arrived on the scene. See, Davis, supra. He notes that the officer admitted to recognizing the situation as a dangerous one and that he had a responsibility for the safety of Mr. Hunter at the scene. He reasserts his opinion that Officer Jenkins was not free of fault in this case and that the trial court was mistaken in so ruling.
*308 The City responds that this argument is misplaced and that the trial court was correct in ruling as it did. It points out that the trial court noted this to be a “highly unusual situation” where the officer’s primary objective was to remove the stalled truck from the lane of traffic.
Further, the City states that the case sub judice is, as the trial court stated, “strikingly similar” to that of Freeman v. Tate, 02-1361 (La.App. 3d Cir.6/4/03), 847 So.2d 800, in which a pedestrian was hit while in the road at the direction of an investigating officer. In that case, the trial court granted a motion for summary judgment in favor of the officer and the court 114of appeals affirmed, and noted that the applicable standard of review was gross negligence, stating:
The position of the police car did not constitute gross negligence or reckless disregard for the safety of others, as an approaching vehicle could have seen the lights of the patrol car and could have proceeded with appropriate caution. Even [the offending driver] admitted that he saw the lights on the patrol car as he approached.
The City points out that the appellate court in Freeman, supra, ruled that the officer’s actions did not constitute gross negligence. In summation, the City asserts that Officer Jenkins’ actions did not rise to the level of gross negligence and, accordingly, that this assignment of error is without merit. We agree.
We have already ruled that Officer Jenkins’ actions were not grossly negligent. The officer responded to the scene, parked his cruiser behind the Nebus vehicle, evaluated the scene and returned to his patrol ear. Before any further action could be taken, the truck driven by Mrs. Crenshaw struck the Hunter vehicle and caused this accident. We find Freeman, supra, is instructive to the case sub judice. We agree with the trial court that its facts are notably similar and do not see cause to disagree in this case. Accordingly, we reject this assignment of error.

The trial court erred in failing to award damages to Josh and Sheila Hunter.

The trial court erred in not awarding Mrs. Crenshaw damages.[9]
Since we have ruled that Officer Jenkins was not grossly negligent in the case sub judice, we do not reach the issue of damages or quantum. Accordingly, we preter-mit these issues.
| ^CONCLUSION
For the reasons set forth herein, the judgment of the trial court finding Officer Theo Jenkins and the City of Shreveport without fault is affirmed. Costs of this appeal are assessed to Mary Crenshaw and Josh and Sheila Hunter, respectfully.
AFFIRMED.

. For the purposes of this opinion, the SPD and the City will be collectively referred to as “the City.”

. Just prior to the filing of this suit, Mrs. Crenshaw was interdicted as a result of paranoid schizophrenia. She died in December 2005. For the purposes of this opinion, “Mrs. Crenshaw” will refer to her and Appellant, Mark Crenshaw, collectively.

.“Priority Two” is police vernacular meaning “immediate” response required. Notably, this entire accident was recorded on Officer Jenkins' patrol camera and admitted into evidence.

. Mr. Hunter settled with Mrs. Crenshaw and her insurer.

. We note that Mr. Hunter and Mrs. Cren-shaw urge virtually identical assignments of error (and supporting jurisprudence) on appeal. Accordingly, as their cases have been consolidated, we have elected to combine the assignments of error and will list each party's respective assignment of error, verbatim, throughout this opinion. Mrs. Crenshaw's assignments are denoted with a footnote, respectively.

.This is Mrs. Crenshaw’s assignment of error. The accompanying jurisprudence cited is similar or the same.

. This is Mrs. Crenshaw's assignment of error. The accompanying jurisprudence cited by Mrs. Crenshaw is similar or the same.

. The bottom three are Mrs. Crenshaw's assignments of error. She combines them in her brief and we have elected to address them collectively here. The accompanying jurisprudence cited by Mrs. Crenshaw is similar or the same.

. This is Mrs. Crenshaw's assignments of error. The accompanying jurisprudence cited by Mrs. Crenshaw is similar or the same.