BROWN, Chief Judge.
| plaintiff, Bethany T. Dixon, appeals from a trial court judgment dismissing her claims against defendants, Charles Tucker, O’Nealgas, Inc., and Jamestown Insurance Company, a Risk Retention Group. For the reasons set forth herein, we AFFIRM.

Facts and Procedural History

The vehicular accident giving rise to this litigation occurred on December 6, 2005, at about 2:35 p.m. on Interstate 20 (“1-20”) near Arcadia in Bienville Parish, Louisiana. Access to 1-20 is by roads/ramps designed to gradually merge traffic onto the Interstate. Defendant, Charles Tucker, was driving a 1992 GMC Sierra truck owned by his employer, O’Nealgas, Inc., westbound on 1-20 in the right-hand lane. Plaintiff, Bethany Dixon, was driving a 1994 Dodge van. Plaintiff was attempting to enter 1-20 westbound from an on-ramp. When she merged onto 1-20, her van was struck on the left rear by Tucker’s pickup truck and careened off 1-20, crashing into a tree.
Tucker testified that he first saw plaintiffs vehicle when it was three-fourths of the way up the ramp. He believed that plaintiffs speed was 30 mph while he was traveling at 70 mph (the speed limit). Tucker claims that, seconds later, plaintiff suddenly moved into the right lane. Tucker swerved but was unable to move into the left lane because a semi-trailer truck was occupying that lane. Tucker’s pickup hit the left rear end of plaintiffs van.
Plaintiff suffered multiple injuries due to the crash and was transported by ambulance to Minden Medical Center. Louisiana State Trooper Christopher Bastow was dispatched to the scene. Trooper Bastow cited Tucker for careless operation. The ticket was later changed by the 12district attorney to illegal parking and Tucker paid a fine. The ticketing testimony was not objected to and was admitted *1103 into evidence. However, see Maricle v. Liberty Mut. Ins. Co., 2004-1149 (La.App.3d Cir.03/02/05), 898 So.2d 565.
Plaintiff filed suit on October 2, 2006, against defendants, Charles Tucker, O’Nealgas, Inc., and Jamestown Insurance Company, a Risk Retention Group, seeking damages for physical pain and suffering, mental pain and anguish, physical disability, humiliation and embarrassment, medical expenses, lost wages, loss of future earning capacity, and risk of traumatically induced arthritis. At the parties’ request, the trial was bifurcated with liability being tried first. Testimony was heard from Tucker and Dixon. Trooper Bastow’s deposition testimony was admitted into evidence in lieu of his live testimony.
Defendants also called Sergeant Todd Hylbert, a member of the Bossier City Police Department, as an expert witness in accident reconstruction and accident investigation. Over objections, Sgt. Hylbert was accepted by the court as an expert witness. Sgt. Hylbert testified that, according to his calculations, Tucker would not have had enough time to react to Dixon suddenly merging onto 1-20. Therefore, he testified, plaintiff was at fault for failing to obey the yield sign. The trial court found in favor of defendants and dismissed plaintiffs demands. Thereafter, plaintiff timely appealed.
|ROn appeal, plaintiff argues that the trial court erred in finding that Tucker was not at fault for the accident and in qualifying Sgt. Hylbert as an expert witness.

Discussion

Admission of Hylbert’s Expert Testimony

Expert witness testimony is governed by La. C.E. art. 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Formal education or training in a particular field is not always necessary to qualify as an expert in a particular field; rather experience alone may be sufficient. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.01/29/96), 666 So.2d 1073.
In the case sub judice, plaintiff objects to Sgt. Hylbert being accepted as an expert in accident reconstruction. Plaintiff complains that Sgt. Hylbert has no educational background in math, engineering or the sciences. Further, plaintiff notes that Sgt. Hylbert has been accepted as an expert witness in accident reconstruction only in criminal trials, and in those cases, he was an investigating officer.[1] Plaintiff also contends that Sgt. Hylbert’s methodology and conclusions in his report are based upon speculation and are therefore unreliable.
14Finally, plaintiff also avers that Sgt. Hylbert’s testimony is at odds with Trooper Bastow’s testimony regarding fault in the accident. Plaintiff, however, did not go through the process of qualifying Trooper Bastow as an expert. Courts have held that an investigating officer was not automatically an expert in accident reconstruction or qualified to render an opinion as to causation of the accident. See Maride, supra; Guidry v. Boston Old Colony Ins. Co., 540 So.2d 543 (La.App. 3d Cir.1989), writ denied, 543 So.2d 7 (La.1989). Again, no objection was made as to Trooper Bastow’s opinion. Bastow stated that he graduated from the State Police Academy and in nine years as a trooper, he had worked many accidents.
*1104 Sgt. Hylbert possessed a bachelor’s degree in Criminal Justice and an associate’s degree in Law Enforcement Technology. He had been a member of the Bossier City Police Department since 1993, serving for a time as a supervisor over the Violent Crimes and Homicide Unit and the Fatality Accident Investigation Team. Sgt. Hyl-bert testified that he had nine years of experience investigating accidents. Further, Sgt. Hylbert provided documentation that he attended a series of courses administered by the Traffic Safety Institute of Northwestern University of Illinois at the Louisiana State Police Academy. Specifically, the record reveals that he received certificates of completion for 120 hours of course work in “traffic accident reconstruction,” 160 hours of course work in “traffic accident investigation,” and 40 hours of course work in “vehicle dynamics.”
In accepting Sgt. Hylbert as an expert witness, the trial court opined:
[W]hether he was reconstructing at the time of the scene or he came back and reconstructed it afterward, I think an accident 15reconstructionist [sic] is an accident reconstructionist, whether you are a fact witness at the time or fact witness afterward. So, I’m going to agree that Sergeant Hylbert is an expert in accident reconstruction.
The trial court has great discretion in determining the competence of an expert witness and that determination will not be overturned absent an abuse of discretion. Hunter v. City of Shreveport, 41,-192 (La.App.2d Cir.06/28/06), 935 So.2d 300, writs denied, 06-1907, 06-1908 (La.11/03/06), 940 So.2d 655. The test of competency of an expert is his or her knowledge of the subject about which he or she is called to express an opinion, which may be shown through a combination of the expert’s specialized training, work experience and practical application of the expert’s knowledge. State v. Taylor, 42,627 (La.App.2d Cir.10/24/07), 968 So.2d 1135, writ denied, 08-0424 (La.11/10/08), 996 So.2d 1063.
In Hunter, supra, this court held that a police officer with 19 years of experience with the Shreveport Police Department, including certification in vehicle investigation and supervisory experience with the Accident Investigation Unit, was qualified to testify as an expert witness. Likewise, the Fourth Circuit has held that a trial court did not err in qualifying, as an expert witness, a Louisiana State Trooper who had police experience and completed a nine-week course at the “Northwestern Traffic Police Officer Training for Accident Reconstruction.” Haik v. Allstate Ins. Co., 09-0860 (La.App.4 Cir.03/31/10), 39 So.3d 711, writ denied, 10-1921 (La.11/05/10), 50 So.3d 809.
After examining Sgt. Hylbert’s qualifications and the technical methodology he employed in forming his opinion, we cannot say the trial j 6court abused its discretion in qualifying him to testify in the present litigation as an expert witness in accident reconstruction.
In reaching his opinion, Sgt. Hyl-bert utilized deposition testimony from Tucker and Bastow, as well as the accident report, accident scene photographs and a scale diagram of the accident scene prepared by a licensed surveyor. He then employed various mathematical formulae to determine how long defendant had to react to plaintiff merging onto the Interstate. His resulting conclusion was that, given the respective speeds at which Dixon and Tucker were traveling when Dixon merged, the distance between the two vehicles would have been covered in “.17 of a second,” leaving Tucker no time to avoid the collision.
Sgt. Hylbert based his calculations on testimony from Tucker and Trooper Bas- *1105 tow and facts from the accident report. Plaintiff, in her opposition to a motion for summary judgment filed by defendants, claimed that she had been traveling at a speed of 45 to 50 mph when she merged from the on-ramp onto 1-20. However, plaintiff made no mention of her speed at the trial or in her pre-trial or post-trial memoranda. Plaintiffs memory at trial was limited to not seeing any other vehicles when she pulled onto 1-20 and then waking up in the ambulance. Tucker testified and the accident report noted that plaintiff was traveling at a speed of 30 mph.
Appellant contends that Sgt. Hylberfs testimony about how the accident happened was inadmissible because it was based only on the hearsay statement of the defendant truck driver. An accident reconstruction expert relies on how much information and data can be gathered from an 17accident scene, the objects involved in the accident and reports about the accident. Sgt. Hylbert stated that he based his opinion on his observations of the physical evidence found at the scene, the positions of the vehicles, the damage to them and the truck driver’s statement to him. We note that the Fourth Circuit has held that expert testimony based on police accident reports was admissible, even though the police reports themselves were per se inadmissable hearsay. See, Wiley v. City of New Orleans, 2000-1544 (La.App.4 Cir.05/16/01), 809 So.2d 151, writs denied, 02-0616, 02-641 (La.05/10/02), 815 So.2d 842, 843.
The trial court qualified Sgt. Hylbert as an expert and allowed him to state, over objection, his conclusion that plaintiff was at fault. An expert who has been duly qualified may express his opinion on a given state of facts. The opposing party may, by cross-examination of the expert, elicit other facts to show that the witness’s underlying facts are not correct. As a general rule, the factual basis of an expert’s opinion goes to the credibility of the testimony, not its admissibility, and it is up to the opposing party to examine the factual basis of the expert’s opinion in cross-examination. La. C.E. art. 703; Lyons v. J.A. Auger, Inc., 35,691 (La.App.2d Cir.06/12/02), 821 So.2d 536, writ denied, 02-2337 (La.11/15/02), 829 So.2d 437. When an expert’s testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but rather presents a fact question as to the weight which should be assigned the opinion. Ultimately, the weight to be given expert testimony is dependant 18upon the facts on which it is based, as well as the professional qualifications and experience of the expert. Lyons, supra.

Allocation of Fault

In civil cases, a trial court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Holland v. State Farm Mut. Auto. Ins. Co., 42,753 (La.App.2d Cir.12/05/07), 973 So.2d 134. To reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra; Broussard v. Zurich American Ins. Co., 44,695 (La.App.2d Cir.09/23/09), 23 So.3d 370. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra.
Where two permissible views of the evidence exist, the fact finder’s *1106 choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Easter v. Direct Ins. Co., 42,178 (La.App.2d Cir.05/09/07), 957 So.2d 323. Further, when findings are based on determinations regarding credibility of witnesses, the manifest error-elearly wrong standard demands great deference to the trier of fact’s findings. Id.
Plaintiff argues that the evidence shows that defendants failed to rebut the presumption that Tucker was at fault for rear-ending her vehicle. |nA well established presumption exists that, in rear-end collisions, the following driver breached the standard of care set out in La. R.S. 32:81 and is presumed negligent.[2] Mart v. Hill 505 So.2d 1120 (La.1987); Ebarb v. Matlock, 46,243 (La.App.2d Cir.05/18/11), 69 So.3d 516, writ denied, 11-1272 (La.09/23/11), 69 So.3d 1164.
However, a driver merging onto a limited access highway has an obligation to ensure that the movement can be made safely and shall yield the right-of-way. La. R.S. 32:123, provides, in pertinent part:
D. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the cross walk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right of way ... to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard. (Emphasis added.)
See also La. R.S. 32:64, La. R.S. 32:79.
In addition, the following driver who shows that the lead driver negligently created a hazard which could not reasonably be avoided is not at fault. Ebarb, supra. This is known as the sudden emergency doctrine. Holland, 973 So.2d at 137. In the instant case, it is undisputed that Tucker rear-ended plaintiffs vehicle; however, Tucker’s testimony as well as the testimony of Sgt. Hylbert showed that Tucker had insufficient time to react to the hazard that plaintiff had created.
|10In its Reasons for Judgment, the trial court noted that “[f]rom her testimony Mrs. Dixon didn’t know how the accident occurred.” The trial court explained that plaintiff said that she did not see any vehicles at the time she merged, then she became unconscious and awoke in an ambulance delivering her to Minden Medical Center. The trial court further opined:
Mr. Tucker, [sic] testified that he was traveling the speed limit on 1-20. He saw Ms. Dixon’s van located on the on-ramp. He further testified that Ms. Dixon pulled out on 1-20 from the on-ramp with no signal nor did she yield to oncoming traffic. He put on his brakes and pulled to left [sic] but he couldn’t move over to the left because an eighteen wheeler was in the left lane. Therefore, his truck impacted the rear of Ms. Dixon’s van.[3]
The trial court concluded that plaintiff “failed to yield and failed to observe the *1107 O’Nealgas Track while she was entering I-20.”
In making its factual findings, the trial court chose to credit Tucker’s testimony. Importantly, the trial court found that plaintiff failed to signal or yield to oncoming traffic and created a hazard which defendant could not avoid. Trooper Bas-tow did cite Tucker as being at fault in the collision; however, Sgt. Hylbert testified that he was “unable to find any evidence as to how he [Bastow] came to that conclusion.” The reason given by Trooper Bas-tow in his deposition was “I think that if he had of when he first saw her coming out would have switched lanes, [sic] there wouldn’t have been any accident.” Tucker testified that plaintiff merged suddenly, without signaling, while traveling at a precariously slow speed. He further testified Inthat he could not get over due to the presence of an semi-trailer truck in the left lane.
The trial court examined this and all other available evidence and testimony and found in favor of defendants. After a thorough review of the record, we cannot say that the trial court’s findings lacked a reasonable factual basis. Therefore, we hold that the finding was not manifestly erroneous.

Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed. Costs of appeal are assessed against plaintiff, Bethany T. Dixon.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, MOORE, and LOLLEY, JJ.
Rehearing denied.

. At trial, counsel for plaintiff averred that in a criminal case Hylbert "would be qualified if he did do [sic] the investigation of the matter.”

. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable having due regard for the speed of such vehicle and the traffic upon and the condition of the highway. La. R.S. 32:81.

. Plaintiff contends that there were no skid marks at the scene of the accident which would indicate that Tucker attempted to slow down before the collision. However, when asked about whether skid marks were visible at the scene, Trooper Bastow testified, "I don’t remember. I just don't recall.”